IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANDREA SARDIS,
as Administrator of the Estate of
EVANGELOS SARDIS, Deceased,
        Plaintiff,

v.                                                Civil Action No. 3:17-cv-818

OVERHEAD DOOR CORPORATION,
        Defendant.

## OPINION

This matter comes before the Court on a number of pending motions in this case. The plaintiff[1] and the defendant, Overhead Door Corporation, have moved to exclude experts and specific testimony. (Dk. Nos. 28, 30, 39, 41, 45, 47, 48, 50, 52.) Overhead Door has also moved for summary judgment. (Dk. No. 43.) The Court held hearings on the motions on November 20, 2018, and December 7, 2018, and will now address each motion in turn.

### I. BACKGROUND

Overhead Door designs and manufactures garage doors. Its commercial garage doors roll around a shaft at the top of the doorway behind a metal hood. Because Overhead Door manufactures the hoods in separate sections, it ships sections of the hoods to distributors in cardboard crates,[2] which it also designs and manufactures. Overhead Door ships up to three hood sections per crate, resulting in a maximum weight of approximately 300 pounds per crate.

---

[1] The Court will refer to Andrea Sardis as "the plaintiff," and Evangelos Sardis, the decedent, as "Sardis."

[2] Overhead Door calls the object a "box," while the plaintiff insists that it is a "crate." Because the Court must draw all reasonable inferences in the light most favorable to the plaintiff as the non-moving party at the summary judgment stage, the Court will refer to the object as a "crate" in this Opinion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In December, 2014, Overhead Door changed its crate design to a triple-wall cardboard body with wooden endcaps. The endcaps have one horizontal and two vertical boards, forming a "U" shape. Five smaller horizontal boards, or "slats," connect the two vertical boards. The endcaps have a gap between the first and second slat, which creates a handhold.

Sardis worked for the Overhead Door distributor Washington Overhead Door ("WOD"). In June, 2016, Sardis and his supervisor, Keith Lawrence, were working at a jobsite when two other WOD employees arrived with a hood in their flatbed truck. Sardis and Lawrence received instructions to transfer the hood to the metal roof rack on Lawrence's truck so that the men could take it to another site for installation. Sardis, Lawrence, and the two employees moved the crate from the flatbed truck to Lawrence's roof rack. Sardis and Lawrence then drove the crate to the installation site.

At the installation site, Sardis and Lawrence tried to remove the hoods from the truck separately. Because they could not remove the hoods without damaging them, Lawrence called for a forklift. Two other WOD employees arrived with the forklift. Lawrence and another employee struggled to operate the forklift, and the crate tipped toward the truck cab each time they tried to move it. Sardis then climbed onto an extension ladder on top of the truck. Sardis pulled on the handhold of the crate, and the slat came off the wooden endcap. He then fell off the truck and hit the asphalt with the back of his head. Sardis died fourteen days later in the hospital.

The plaintiff has sued Overhead Door, alleging (1) wrongful death – negligence; (2) wrongful death – design defect; (3) breach of implied warranty; and (4) failure to warn.[3] The

---

[3] The plaintiff also sued Overhead Door for wrongful death – manufacturing defect, but appears to have abandoned that claim. (*See* Dk. No. 67, at 10.)

plaintiff and Overhead Door have moved to exclude experts and specific testimony. Overhead Door has also moved for summary judgment.

## II. DISCUSSION

### A. *Daubert Motions*

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A witness who qualifies as an expert may provide opinion testimony only if "the expert's 'specialized knowledge will help the trier of fact to understand the evidence or to determine a basic fact in issue;' and the testimony is 'based on sufficient facts or data;' 'is the product of reliable principles and methods;' and 'the expert has reliably applied the principles and methods to the facts of the case.'" *Carter v. United States*, No. 4:13-cv-112, 2014 WL 3895751, at *3 (E.D. Va. 2014) (quoting Fed. R. Evid. 702). District courts act as "gatekeeper[s]" to ensure that proffered testimony is reliable, relevant, and will assist the trier of fact. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589-93 (1993).

*Daubert* sets forth a two-prong test for admissible expert testimony: "(1) the expert testimony must consist of 'scientific knowledge'—that is, the testimony must be supported by appropriate validation; and (2) the evidence or testimony must 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Carter*, 2014 WL 3895751, at *3 (quoting *United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995)). "The proponent of the expert testimony bears the burden of proving that both prongs are met by a preponderance of the evidence." *Id.*

Under the first *Daubert* prong, courts consider the reasoning and methodology of the testimony. 509 U.S. at 592-93. The expert must base his testimony on specialized knowledge, rather than mere belief or speculation. *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). District courts have "considerable leeway in deciding in a particular case how to go about

3

determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). *Daubert* sets forth the following factors to assist courts in determining reliability:

> (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (citing *Daubert*, 509 U.S. at 592-94).

Under the second *Daubert* prong, courts determine whether the expert's reasoning is "relevant to the task at hand." 509 U.S. at 597. "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986).

### *1. Michael S. Wogalter, Ph.D.*

The plaintiff retained Michael S. Wogalter, Ph.D., to testify that (1) the gap between the first and second slats on the crate creates a handhold; (2) Overhead Door should have provided warnings and instructions about how to use the handhold; and (3) Overhead Door failed to conduct the appropriate testing or analysis to identify defects in the crates. The parties have stipulated that the gap is a handhold, so the Court will exclude that portion of Wogalter's testimony.

Wogalter, however, may testify that Overhead Door should have provided warnings and instructions about how to use the handhold and that Overhead Door did not conduct the appropriate testing or analysis to identify defects in the crates.[4] Overhead Door raises legitimate concerns as

---

[4] The plaintiff agrees "not to elicit any opinions from Dr. Wogalter at trial about any other warnings that the crate should have had other than warnings regarding the use of the gap as a handhold." (Dk. No. 63, at 15.)

4

to some of Wogalter's opinions, but those concerns "are properly reserved for cross-examination, and do not justify the wholesale exclusion of [Wogalter's] testimony." *United States v. Aman*, 748 F. Supp. 2d 531, 536 (E.D. Va. 2010); *see also, e.g., Tomsic v. Real Flame Co.*, No. 9:15-cv-78, 2016 WL 9558957, at *7 (E.D. Tex. Dec. 21, 2016) (finding Wogalter's testimony relevant and reliable in a dispute regarding the sufficiency of a warning label). Accordingly, the Court will grant in part and deny in part the motion to exclude Wogalter.

### 2. *Richard S. Epstein, M.D.*

The plaintiff retained Richard S. Epstein, M.D., a psychiatrist, to provide testimony regarding (1) the plaintiff's mental health injuries and damages and (2) the plaintiff's future mental health care needs. Courts typically classify such an expert as a "grief expert." Courts have "wide discretion" to decide on a case-by-case basis whether a grief expert's testimony "is unique and non-cumulative," and would "assist the trier of fact in [its] determination." *Carter*, 2014 WL 3895751, at *4.

In this case, the plaintiff cannot call a doctor to explain the grief that she and her son suffer, how long they will need to recover, and the amount of counseling they will need. These matters "can be left to turn mainly upon the good sense and deliberate judgment of the trier," *id.*, so calling Epstein as an expert is simply an attempt to put a patina of science over something that everyone understands. Accordingly, the Court will grant Overhead Door's motion to exclude Epstein and evidence regarding the plaintiff's future medical care.

### 3. *Sher Paul Singh, Ph.D.*

Overhead Door objects to the plaintiff's packaging design expert, Sher Paul Singh, Ph.D., primarily disputing Singh's conclusion that the crate was unreasonably dangerous because it did

not comply with the industry standard of ASTM D6039.[5] Overhead Door says that Singh failed to test the crate before his analysis, so his opinion has no reliable scientific basis. "[A] lack of testing," however, "affects the weight of the evidence," not its admissibility.[6] *Bilenky v. Ryobi Ltd.*, No. 2:13cv345, 2014 WL 7530365, at *4 (E.D. Va. Dec. 5, 2014). Overhead Door may properly attack Singh's conclusions "by [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Pugh v. Louisville Ladder, Inc.*, 361 F. App'x 448, 452 (4th Cir. 2010).

Singh, however, cannot testify that Overhead Door "failed to communicate to users that the openings were not meant to be used as hand holes." (Dk. No. 46-3, at 2.) As explained above, the parties agree that the handhold is a handhold. The Court, therefore, will grant in part and deny in part the motion to exclude Singh.

### 4. *Marshall S. White, Ph.D.*

Overhead Door retained Marshall S. White, Ph.D., to testify regarding the cause of the handhold's failure. The plaintiff attacks the reliability of White's testimony as unreliable and based on speculation because White never tested his theories. Although White's opinions involve some level of estimation, this goes, at best, to the weight of his testimony, not its admissibility.

---

[5] ASTM D6039 refers to the American Society of Testing and Materials' Standard Specification for Open and Covered Wood Crates. (*See* Dk. No. 46-4, at 27:33.)

[6] Moreover, Singh relies on the industry standard of ASTM D6039 to support his conclusions. His reliance on an industry standard distinguishes his report from those that lack support from "any evidence such as test data or relevant literature in the field." *Nease v. Ford Motor Co.*, 848 F.3d 219, 234 (4th Cir. 2017); *see also Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 421 (4th Cir. 2014) (discounting the conclusions of an expert who "testified to no customs of the trade, referred to no literature in the field, and did not identify the reasonable expectations of consumers").

*See Bilenky*, 2014 WL 7530365, at *4. White offers valid opinions based on his experience in the field.

The plaintiff also asks the Court to exclude White's "beam theory" opinion because he raised it for the first time during his deposition. During White's deposition, he used the "beam theory" to explain his view of the accident's cause. In a response to a question from counsel regarding the handhold's failure, White explained that the crate "was acting as a beam on top of those fork tines, and it deformed and collapsed." (Dk. No. 78-2, at 97:6-13.) After counsel asked White to explain "[h]ow exactly . . . the bands being taken off cause[d] the board to come out," he responded by drawing a "situation schematic" and describing "a tube . . . act[ing] as a beam." (*Id.* at 101:15-25.) White's deposition testimony shows that he invoked the "beam theory" merely to illustrate the information contained in his report, so the Court will not exclude that opinion. Accordingly, the Court will deny the motion to exclude White.

### 5. *James W. Stanley*

Overhead Door's expert James W. Stanley offers four opinions: (1) that Sardis failed to follow safe material handling practices; (2) that Sardis should have used fall protection; (3) that Sardis should have worn a hard hat; and (4) that Sardis placed himself in "open and obvious" danger. (Dk. No. 51, at 2.)

Stanley may testify that Sardis failed to follow safe material handling practices. Although Stanley incorrectly cited some regulations, he knows the industry standards. Stanley worked for the Occupational Safety and Health Administration ("OSHA") for twenty-five years, served as a safety executive at a large steel plant, and served on the National Advisory Committee on Occupational Safety and Health. He offered his opinions regarding safe material handling practices based on his extensive experience and familiarity with OSHA regulations. *See Palacino*

7

*v. Beech Mountain Resort, Inc.*, No. 1:13cv334, 2015 WL 8675991, at *3 (W.D.N.C. Dec. 11, 2015) (finding an expert reliable who "formed his opinion based on his years of experience . . . and after reviewing numerous documents, industry publications, and industry standards"). Stanley's opinions regarding safe material handling practices thus meet *Daubert*'s reliability standards.

The Court, however, will exclude Stanley's testimony that Sardis should have used fall protection, should have worn a hard hat, and placed himself in "open and obvious" danger. Overhead Door offers no evidence that Sardis was required to wear fall protection in these circumstances. Additionally, any evidence related to the hard hat would be unduly prejudicial.[7] *See* Fed. R. Evid. 403.

Stanley's testimony that Sardis placed himself in "open and obvious" danger would not help the trier of fact. *See* Fed. R. Evid. 702. "Whether a hazard is open and obvious is a question of fact, should be left to the jury when the evidence is in conflict . . . and ordinarily is a subject matter that can be discerned with common sense or otherwise is within the knowledge of a reasonable juror." *Long v. Ocean Breeze Holdings, LLC*, 2:14-cv-484, 2016 WL 1689048, at *2 (E.D. Va. Mar. 4, 2016) (internal citations omitted). Accordingly, the Court will grant in part and deny in part the motion to exclude Stanley.

### B. *Motions in Limine*

#### *1. Hard Hat*

The plaintiff has moved to exclude Overhead Door's evidence that Sardis was not wearing a hard hat at the time of the fall. Overhead Door "provide[s] nothing more than mere speculation"

---

[7] As explained below, the Court will exclude any evidence related to whether Sardis wore a hard hat.

to support its argument that a hard hat would have prevented the injury in this case.[8] *Morris v. Bland*, 666 F. App'x 233, 238 (4th Cir. 2016). Accordingly, the Court will grant the motion to exclude any evidence related to whether Sardis wore a hard hat because its probative value "is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Finally, Overhead Door's argument that Sardis' failure to wear a hard hat shows his contributory negligence would confuse the jury into thinking that the hard hat might have prevented the injury. *See id.*

### 2. *The Safety Manual*

Overhead Door seeks to introduce evidence that the Mid-Atlantic Door Group safety manual establishes the relevant standard of care in this case. Virginia law prohibits a party from introducing a company's internal policies to establish the standard of care. *See Benedict v. Hankook Tire Co. Ltd.*, 295 F. Supp. 3d 632, 650 (E.D. Va. 2018) ("Virginia courts have decided that a company's 'private rules' are inadmissible to prove a standard of care."). "[T]he Virginia rule is sufficiently bound-up with state policy so as to require its application in federal court." *Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 110 (4th Cir. 1995). The Court thus will exclude the safety manual to show the standard of care.

Overhead Door argues that the safety manual is admissible to show Sardis' contributory negligence because he failed to "act as a reasonable person under the circumstances for his or her own safety." Hr'g Tr. 26:9-10, Dec. 7, 2018. Evidence of the safety manual for that purpose, however, risks confusing the jury into thinking that Sardis violated the standard of care because

---

[8] At the hearing on December 6, 2018, counsel for Overhead Door said that he did not intend to call an expert to testify as to the effects of wearing (or not wearing) a hard hat. *See* Hr'g Tr. 6:15-7:8, Dec. 7, 2018.

9

he did not comply with the safety manual. *See* Fed. R. Evid. 403. Accordingly, the Court will grant the motion to exclude the safety manual.

### 3. *Other Incidents*

Overhead Door has moved to exclude evidence of similar incidents.[9] Evidence of other incidents is admissible only if the incidents are substantially similar to the incident in question. *See Bilenky*, 2014 WL 12591078, at *7 ("Evidence of similar accidents occurring under substantially similar circumstances and involving substantially similar components may be probative of defective design."). Otherwise, evidence of similar incidents "is admissible for the limited purpose of proving notice or actual knowledge of an alleged defect." *Jones v. Ford Motor Co.*, 204 F. App'x 280, 286 (4th Cir. 2006).

Overhead Door objects to testimony related to the following incidents: (1) ten instances involving customer complaints, problems, and warranty returns; (2) freight incidents involving the "Door-in-a-Box" product and Overhead Door's decision to put a "do not pull" label on the product; and (3) testimony from three Overhead Door employees who said that they pulled a board loose from a crate. The plaintiff, however, has failed to show that any of the other incidents involved a crate with a similar design as the crate in this case, so the plaintiff cannot establish that the incidents

---

[9] The parties dispute whether the Federal Rules of Evidence or Virginia common law applies. In *Bilenky*, the court analyzed a motion to exclude evidence of similar incidents under Federal Rule of Evidence 403, reasoning that the Federal Rules of Evidence "do not create friction with any Virginia 'evidentiary rule [that] either embodies or is closely tied to a state substantive policy.'" *Bilenky*, 2014 WL 12591078, at *6-7 (quoting *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The Court will thus analyze Overhead Door's motion to exclude evidence of similar incidents under Federal Rule of Evidence 403.

"occurred under substantially similar circumstances as the plaintiff's incident."[10] *Id.* Accordingly, the Court will grant the motion to exclude evidence of other incidents.[11]

### 4. *Singh's "Supplemental" Opinions*

Overhead Door objects to several opinions contained in Singh's rebuttal report because the report does not qualify as a proper rebuttal report. "A rebuttal or reply expert report is proper if the intent of the report is 'solely to contradict or rebut evidence on the same subject matter identified by the opposing party's expert report.'" *Snider-Jefferson v. Amigo Mobility Int'l, Inc.*, No. 2:15-cv-406, 2016 WL 4424954, at *4 (E.D. Va. Aug. 17, 2016) (quoting *Withrow v. Spears*, 967 F. Supp. 2d 982, 1001 (D. Del. 2013)).

Singh's rebuttal report contains opinions touching on three topics: (1) the crate's construction; (2) why the crate failed; and (3) whether Overhead Door adequately tested the crate. At the hearing on November 20, 2018, counsel for the plaintiff said that he no longer intended to rely on Singh's rebuttal report as to the first and third topics. *See* Hr'g Tr. 18:12-17, 19:2-7, Nov. 20, 2018. Counsel for Overhead Door agreed that Singh's opinions regarding the crate's failure properly qualify as rebuttal evidence. *See id.* at 22:22-23:3. The Court, therefore, will grant the motion to exclude the information in Singh's rebuttal report related to the crate's construction and whether Overhead Door performed adequate testing and will deny the motion to exclude Singh's rebuttal opinions related to the cause of the crate's failure.

---

[10] Because Overhead Door did not know about any of the allegedly similar incidents, the plaintiff cannot introduce them to show notice. Bradley Knable, Overhead Door's corporate designee, testified that he had no knowledge "of any other instances whatsoever in which a horizontal wooden board . . . broke off or came off of a hood crate." (Dk. No. 42-1, at 186:3-7.)

[11] The Court, however, cautions Overhead Door from opening the door for the plaintiff to introduce evidence of the other incidents. Should Overhead Door try to introduce evidence that they ship thousands of crates with no reported problems other than the incident involving Sardis, the plaintiff may then introduce evidence of the three Overhead Door employees who said they had difficulties with a loose board on the crate.

## C. *Motion for Summary Judgment*[12]

Overhead Door moves for summary judgment as to all claims, primarily asserting its affirmative defenses. When a moving party "seeks summary judgment on an affirmative defense, it must conclusively establish all essential elements of that defense." *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012). If the moving party produces "sufficient evidence in support of its affirmative defense, the burden of production shifts" to the non-movant to identify facts demonstrating a genuine issue for trial. *Id.* If the moving party fails to produce sufficient evidence, "summary judgment must be denied . . . for the non-movant is not required to rebut an insufficient showing." *Id.* (citation omitted). Because the plaintiff identifies genuine disputes of material fact, the Court will deny Overhead Door's motion for summary judgment.

### *1. Whether the Crate Was Unreasonably Dangerous*

Overhead Door argues that the plaintiff cannot prevail on her design defect claim because she cannot demonstrate that the crate "was unreasonably dangerous." (Dk. No. 44, at 17.) Under Virginia law, a plaintiff asserting a product defect claim must establish three elements: (1) "the product contained a defect which rendered it unreasonably dangerous for ordinary or foreseeable use"; (2) the defect "existed when it left the defendant's hands"; and (3) the defect "actually caused the plaintiff's injury." *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993). "In determining what constitutes an unreasonably dangerous defect, a court will consider safety

---

[12] Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255. Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

12

standards promulgated by the government or the relevant industry, as well as the reasonable expectations of consumers." *Id.* When no established norm exists, courts must rely on the opinion testimony of experts to ascertain the applicable safety standard. *Ford Motor Co. v. Bartholomew*, 224 Va. 421, 430, 297 S.E.2d 675, 679 (1982).

Overhead Door says that the plaintiff (1) cannot point to a "government or industry standard," (Dk. No. 44, at 18-19); (2) cannot produce an expert witness to support her claim, (*id.* at 20-21); and (3) cannot provide "evidence of consumer expectations," (*id.* at 21). If the plaintiff can show that a material dispute of genuine fact exists as to whether a government or industry standard applies, then the Court must deny summary judgment. *See Benedict*, 993 F.2d at 638 (explaining that a plaintiff must provide expert testimony or evidence of the reasonable expectations of consumers to demonstrate that a "product is unreasonably dangerous" only in the absence of government or industry standards). Here, the plaintiff points to an industry standard: ASTM D6039. Overhead Door simply disagrees that D6039 applies here, but that does not entitle Overhead Door to summary judgment.

The plaintiff has testimony from an expert witness, Singh, that the crate qualified as a "crate" and, accordingly, that D6039 applied.[13] (Dk. No. 67, at 14-15.) Thus, Singh testified that Overhead Door failed to comply with that standard. (*Id.* at 15, 17.) The plaintiff makes an adequate showing that a genuine dispute of material fact exists as to whether the crate contained a "defect which rendered it unreasonably dangerous for ordinary or foreseeable use." *Alevromagiros*, 993 F.2d at 420.

---

[13] Furthermore, the plaintiff has pointed out that Overhead Door's own expert, Dr. White, testified that the D6039 standard applies at least with respect to the wood ends. (*See* Dk. No. 67, at 16.)

13

## 2. *The Plaintiff's Failure to Introduce the Crate*

Overhead Door says that the plaintiff's claims fail as a matter of law because the plaintiff cannot produce the crate at issue here. "Virginia law does not support the proposition that a products liability case absolutely cannot go forward in the absence of the specific product alleged to have produced the injury, but the burdens which such a circumstance imposes on the plaintiff are substantial." *Lemons v. Ryder Truck Rental, Inc.*, 906 F. Supp. 328, 333 (W.D. Va. 1995). To satisfy her burden, the plaintiff must establish that (1) the crate was defective, and (2) that the defect existed "when it left the defendants' hands." *Id.*

In this case, the plaintiff's expert witness, Singh, testified that the crate was defective because it did not comply with the relevant industry standards. (*See* Dk. No. 67-11, at 27 ("[T]he crate should have been designed with end cleats and have no open windows or access holes.").) He arrived at this conclusion after examining photographs of the crate at issue as it existed "after the incident." (*Id.* at 28.) Although the plaintiff has not produced the crate, her experts rely on photographs of the crate as it existed after the incident. This litigation thus differs from products liability cases in which the plaintiff only produces photographs "taken long after the accident and which do not even definitively depict" the product at issue. *Stokes v. L. Geismar, S.A.*, 815 F. Supp. 904, 905 (E.D. Va. 1993) (granting summary judgment because the plaintiff failed to produce "the saw operated by plaintiff on the day he was injured" or "any eyewitness testimony"). The plaintiff's claims do not fail as a matter of law merely because she has not produced the crate.

## 3. *Contributory Negligence*

"Contributory negligence is an affirmative defense that must be proved according to an objective standard whether the plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances." *Jenkins v. Pyles*, 269 Va. 363, 388, 611 S.E.2d 404, 407

(2005). "The issue whether a plaintiff is guilty of contributory negligence is ordinarily a question of fact to be decided by the fact finder." *Id.* at 389, 611 S.E.2d at 407. Courts grant summary judgment on the issue of contributory negligence "only when reasonable minds could not differ about what conclusion could be drawn from the evidence." *Id.*

This is a case in which reasonable minds could differ. Overhead Door says that Sardis "undertook a dangerous task" while "in a dangerous position . . . without being instructed to do so by his trainer and without taking a single precaution to ensure his safety." (Dk. No. 44, at 25.) But the facts also show that Sardis had been working for Overhead Door for a mere six days before the accident and generally followed his supervisor's instructions. In light of the conflicting evidence, the jury must decide whether Sardis "failed to act as a reasonable person would have acted for his own safety under the circumstances." *Jenkins*, 269 Va. at 338, 611 S.E.2d at 407. Because reasonable minds could differ as to Sardis' own negligence, the Court will deny summary judgment.

### 4. *Assumption of the Risk*

Overhead Door also argues that Sardis assumed the risk of the actions that led to his death, precluding recovery. "Assumption of the risk . . . has two requirements: the nature and extent of the risk must be fully appreciated and the risk must be voluntarily incurred." *Amusement Slides Corp. v. Lehman*, 217 Va. 815, 819, 232 S.E.2d 803, 805 (1977). "Knowledge of the risk is essential to assumption." *Budzinski v. Harris*, 213 Va. 107, 110, 189 S.E.2d 372, 375 (1972). Assumption of the risk is normally a question for the fact finder. *Artrip v. E.E. Berry Equipment Co.*, 240 Va. 354, 358, 397 S.E.2d 821, 823 (1990).

The Court will deny summary judgment on the issue of assumption of the risk for many of the same reasons as the issue of contributory negligence. "The doctrines of contributory

negligence and assumption of risk, though closely related, are not identical." *Id.* Unlike contributory negligence, assumption of the risk "involves a subjective test[:] whether a plaintiff fully understood the nature and extent of a known danger and voluntarily exposed himself to it." *Id.* at 358, 397 S.E.2d at 824.

Reasonable minds could differ as to whether Sardis understood the nature and extent of the danger. Sardis worked for Overhead Door for six days before the accident. In that short time, Sardis followed his supervisor's instructions and the practices of other Overhead Door employees. Although a jury could reasonably conclude that Sardis assumed the risk by "balancing on the single rung of the [l]adder," (Dk. No. 44, at 27), a jury could also find that Sardis did not "fully appreciate[] . . . the risk" that the slat would break by pulling the handhold on the wooden endcap. *Lehman*, 217 Va. at 819, 232 S.E.2d at 805. The Court will therefore deny summary judgment as to assumption of the risk.

### 5. *Failure to Warn*

To prove a failure to warn claim, the plaintiff must show that the manufacturer (1) "knows or has reason to know that the [product] is or is likely to be dangerous for the use for which it is supplied"; (2) "has no reason to believe that those for whose use the [product] is supplied will realize its dangerous condition"; and (3) "fails to exercise reasonable care to inform them of its dangerous condition or the facts which make it likely to be dangerous." *Featherall v. Firestone Tire & Rubber Co.*, 219 Va. 949, 962, 252 SE.2d, 358 366 (1979).

The plaintiff has raised a genuine dispute of material fact as to her failure to warn claim, precluding summary judgment. The facts show that Overhead Door did not "consult[] a single industry standard in designing its crates before" distributing them. (Dk. No. 67, at 28.) In light of that omission, a jury could reasonably conclude that, as Singh testified, Overhead Door had a duty

16

to warn foreseeable users not to pull on the handholds. Overhead Door placed no such warning on the crate.

"[A] plaintiff may not recover damages for breach of an implied warranty if the purported defect of which the plaintiff complains was 'known, visible or obvious' to him." *Woods v. Bass Pro Shops, Inc.*, 250 Va. 297, 301, 462 S.E.2d 101, 103 (1995) (quoting *Brockett v. Harrell Bros., Inc.*, 206 Va. 457, 462-63, 143 S.E.2d 897, 902 (1965)). Because the crate has handholds, a jury could reasonably conclude that the risk that the slat would break off was not "known, visible, or obvious" to Sardis without a warning not to pull on the handholds. *Id.*, 462 S.E.2d at 103. Accordingly, the Court will also deny summary judgment on the failure to warn claim.

### 6. *Breach of Implied Warranty*

Overhead Door argues that it has previously disclaimed any implied warranties, so the plaintiff's implied warranty claim fails as a matter of law. The parties agree that the Distributor Agreement between Overhead Door and WOD included a valid disclaimer of any implied warranty of merchantability. The plaintiff argues, however, that Overhead Door materially breached the Distributor Agreement, rendering the implied warranty disclaimer unenforceable.

"Generally, a party who commits the first breach of a contract is not entitled to enforce the contract." *Horton v. Horton*, 254 Va. 111, 115, 487 S.E.2d 200, 203 (1997). This general rule does not apply, however, if the breach did not constitute a "material breach." *Id.* "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Id.*, 487 S.E.2d at 204.

Here, the plaintiff points to a provision in the Distributor Agreement stating that Overhead Door agreed to "furnish[] information [to] distributors regarding safe handling, use and installation of its Products." (Dk. No. 66, Ex. 2, at § IX(a).) According to the plaintiff, Overhead Door

breached this provision by failing to furnish WOD "information . . . regarding safe handling [and] use of its hood crates." (Dk. No. 67, at 30 (internal quotation marks omitted).) Furthermore, the plaintiff claims that this failure constituted a material breach, precluding Overhead Door's enforcement of the implied warranty disclaimer. Given the Court's conclusion that reasonable minds could disagree as to whether Overhead Door owed a duty to provide a warning on its crates, whether Overhead Door breached the Distributor Agreement and whether that breach constituted a material breach likewise represent triable issues. The Court, therefore, will deny summary judgment on the breach of implied warranty claim.

Because the plaintiff has established genuine disputes of material fact as to all claims, the Court will deny Overhead Door's motion for summary judgment in full.

### III. <u>CONCLUSION</u>

With respect to the *Daubert* motions, the Court will order as follows. The Court will grant Overhead Door's motion to exclude Richard S. Epstein, M.D., and evidence regarding the plaintiff's future medical care. (Dk. No. 28.) The Court will grant in part and deny in part Overhead Door's motion to exclude Michael S. Wogalter, Ph.D. (Dk. No. 39.) The Court will grant in part and deny in part Overhead Door's motion to exclude Sher Paul Singh, Ph.D. (Dk. No. 45.) The Court will grant in part and deny in part the plaintiff's motion to exclude James Stanley. (Dk. No. 50.) The Court will deny the plaintiff's motion to exclude the causation opinions of Marshall S. White, Ph.D. (Dk. No. 52.)

Regarding the motions in limine, the Court will order as follows. The Court will grant in part and deny in part Overhead Door's motion to strike Singh's "supplemental" opinions. (Dk. No. 30.) The Court will grant Overhead Door's motion to exclude evidence of other incidents. (Dk. No. 41.) The Court will grant the plaintiff's motion to exclude evidence related to whether

Sardis wore a hard hat. (Dk. No. 47.) The Court will grant the plaintiff's motion to exclude evidence that the Mid-Atlantic Door Group Safety Manual establishes the standard of care. (Dk. No. 48.)

Finally, the Court will deny Overhead Door's motion for summary judgment. (Dk. No. 43.)

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 12 February 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge