IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANDREA SARDIS,
as Administrator of the Estate of
EVANGELOS SARDIS, Deceased,
    Plaintiff,

v.                                        Civil Action No. 3:17-cv-818

OVERHEAD DOOR CORPORATION,
    Defendant.

## OPINION

Evangelos Sardis died in 2016 after sustaining injuries on the job. His widow, Andrea Sardis,[1] filed this products liability litigation against Overhead Door Corporation ("Overhead Door"). The plaintiff contends that Overhead Door negligently designed the product at issue, failed to warn Sardis about the product's dangers, and breached the implied warranty of merchantability. Following a four-day trial in July, 2019, a jury found in the plaintiff's favor and awarded her over four million dollars in damages. Overhead Door has moved for a new trial and for judgment as a matter of law. Because Overhead Door has failed to meet its burden to set aside the jury's verdict, the Court will deny Overhead Door's motions for a new trial and for judgment as a matter of law.

## I. BACKGROUND

Sardis worked for Washington Overhead Door ("WOD"), an Overhead Door distributor operating in Northern Virginia. Overhead Door designs and manufactures commercial "Rolling Steel" garage doors, which roll around a shaft at the top of the doorway behind a metal hood.

---

[1] The Court will refer to Andrea Sardis as "the plaintiff," and Evangelos Sardis, the decedent, as "Sardis."

Overhead Door also designs and manufactures containers to ship sections of the metal hoods to distributors. The containers have a "triple-wall cardboard" frame with wooden endcaps. The endcaps have one horizontal and two vertical boards, forming a "U" shape. Five smaller horizontal boards, or "slats," connect the two vertical boards. A gap exists between the first and second slat, creating a handhold. In this products liability litigation, the plaintiff challenges the design of Overhead Door's cardboard container.

The events giving rise to this case began on June 6, 2016—five days after Sardis began working for WOD as a "Tech Trainee." As a trainee, Sardis worked alongside Keith Lawrence, a more experienced technician. While Sardis and Lawrence were working at a jobsite, two WOD employees arrived to drop off hoods for installation at a different site. The hoods were stored in an Overhead Door cardboard container. Sardis, Lawrence, and the two WOD employees moved the container from a flatbed truck to the roof rack of Lawrence's truck. Sardis and Lawrence then drove the container to the installation site.

At the installation site, Sardis and Lawrence tried to remove the hoods from the truck. When Sardis and Lawrence could not remove the hoods without damaging them, Lawrence called for a forklift. Two WOD employees eventually arrived with the forklift. Lawrence and another employee struggled to operate the forklift, causing the container to tip toward the truck cab each time they tried to move it. Sardis then climbed onto an extension ladder on top of the truck to try to help move the container. When Sardis pulled on the container's handhold, the slat came off the container's wooden endcap. Sardis fell off the truck and to hit the asphalt below with the back of his head. He died fourteen days later in the hospital.

Sardis' widow sued Overhead Door, asserting that Overhead Door negligently designed the container, failed to warn Sardis about its dangers, and breached the implied warranty of

merchantability. The case proceeded to a jury trial in July, 2019. After four days of evidence, the jury found in the plaintiff's favor on all counts and awarded her over four million dollars in damages. Overhead Door has now moved for a new trial and for judgment as a matter of law.[2]

## II. MOTION FOR A NEW TRIAL

Overhead Door asserts the following six grounds for a new trial[3]: (1) the Court misstated the law with respect to a manufacturer's duty to test its products; (2) the Court improperly excluded the safety manual while allowing the plaintiff to introduce circumstantial evidence of safety standards; (3) the Court erroneously admitted evidence concerning the length of nails without expert testimony; (4) the Court should have submitted the assumption of the risk defense to the jury; (5) the Court failed to properly instruct the jury on the definition of "reason to know;" and (6) the Court failed to properly instruct the jury that the plaintiff had the burden to prove that a warning would have prevented Sardis' death.

### A. Legal Standard

Federal Rule of Civil Procedure 59(a) allows courts to order a new trial following a jury verdict. Fed. R. Civ. P. 59(a)(1)(A). "In the Fourth Circuit, a court 'must set aside the verdict and grant a new trial[ ] if . . . (1) the verdict is against the clear weight of the evidence, (2) is based

---

[2] At trial, Overhead Door moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). (Dk. No. 145.) The Court denied the motion from the bench. (Dk. No. 147.) Overhead Door has now renewed its motion under Rule 50(b). *See* Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion.").

[3] Overhead Door initially asserted seven grounds for a new trial. Overhead Door, however, has withdrawn its argument that the Court should order a new trial based on an alleged violation of Federal Rule of Evidence 605. (Dk. No. 188.) Overhead Door also acknowledges that it has waived its appellate rights with respect to its Rule 605 argument. (Dk. No. 195.) Accordingly, the Court will only address Overhead Door's remaining six arguments for a new trial.

upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001) (alterations in original). "[W]hen considering a motion for a new trial under Rule 59, 'a trial judge may weigh the evidence and consider the credibility of the witnesses.'" *Burgess v. Balt. Police Dep't*, 300 F. Supp. 3d 696, 702-03 (D. Md. 2018) (quoting *Poynter by Poynter v. Ratcliff*, 874 F.2d 219, 223 (4th Cir. 1989)).

"The granting or denial of a motion for a new trial under Rule 59(a) 'is a matter resting in the sound discretion of the trial judge.'" *Ray v. Allergan, Inc.*, 863 F. Supp. 2d 552, 556 (E.D. Va. 2012) (quoting *Wadsworth v. Clindon*, 846 F.2d 265, 266 (4th Cir. 1988)). In deciding whether to grant or deny a motion for a new trial, "the crucial inquiry is 'whether an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair.'" *Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir. 1994) (quoting *DMI, Inc. v. Deere & Co.*, 802 F.2d 421, 427 (Fed. Cir. 1986)).

## B. Discussion

### 1. Jury Instructions on a Manufacturer's Duty to Test its Products

The Supreme Court of Virginia has recognized three ways that a product can be unreasonably dangerous: "if it is [1] defective in assembly or manufacture, [2] unreasonably dangerous in design, or [3] unaccompanied by adequate warnings concerning its hazardous properties." *Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 506 (E.D. Va. 2013). Virginia law, however, does not recognize "a 'failure to test' theory as a viable claim separate and apart from the three traditional product defect claims." *Id.* Instead, a manufacturer's duty to test its products "is subsumed within the general duty of the manufacturer to avoid acting in a negligent manner." *Powell v. Diehl Woodworking Mach., Inc.*, 198 F. Supp. 3d 628, 633 (E.D. Va. 2016).

In this case, the plaintiff contends that Overhead Door acted negligently in part because it failed to test the container. Overhead Door challenges two of the jury instructions that addressed the plaintiff's negligence claim and a manufacturer's duty to test its products: Instruction Nos. 21 and 22. Overhead Door argues that both instructions "incorrectly suggest that there is some independent, free-standing duty to conduct testing and that the failure to do so renders a manufacturer negligent." (Dk. No. 167, at 8.) From the start, the plaintiff has alleged that Overhead Door acted in a negligent manner because, "among other things," Overhead Door "[f]ailed to properly and adequately test the [container]."[4] The plaintiff has never advanced the theory that Overhead Door's failure to test the container alone gives rise to liability.

Both instructions reflect the plaintiff's theory and neither misstates Virginia law. First, Instruction No. 21 provides:

> A manufacturer has a duty to make inspections or tests that are reasonably necessary to see that his product is safe for its intended use and for any other reasonably foreseeable purpose.
>
> If a manufacturer fails to perform this duty and the product is unreasonably dangerous, then it is negligent.

(Dk. No. 151, at 22.) The Court crafted Instruction No. 21 by modifying Virginia Model Civil Instruction No. 34.160.[5] At the hearing on the jury instructions, the Court agreed with Overhead

---

[4] (Compl., Dk. No. 1, ⁋ 27) (listing eight different reasons for Overhead Door's alleged negligence); (Pl.'s Bench Mem. in Supp. of Her Claims, Dk. No. 124, at 2) ("A manufacturer also has a duty to make inspections or tests that are reasonably necessary to see that its product is safe for its intended uses and for any other reasonably foreseeable purpose, particularly where the seller knows or has reason to know that the product is likely to be dangerous or defective."); (Pl.'s Mem. in Opp'n to Def.'s Renewed Mot. for J. as a Matter of Law, Dk. No. 172, at 12) ("Sardis does not . . . state a separate cause of action for failure to test.").

[5] "A manufacturer has a duty to make inspections or tests that are reasonably necessary to see that his product is safe for its intended use and for any other reasonably foreseeable purpose. If a manufacturer fails to perform this duty, then it is negligent." Virginia Model Jury Instructions – Civil Instruction No. 34.160 (Matthew Bender & Co. 2020).

Door that Model Instruction No. 34.160 incorrectly suggested that a manufacturer's failure to test its products alone could give rise to liability. To address that concern, the Court added the following phrase to the final sentence of Instruction No. 21: "and the product is unreasonably dangerous." (Dk. No. 151, at 22.)

The Court's modification required the jury to find that the product was unreasonably dangerous before it could hold Overhead Door liable for failing to test the container. In other words, Instruction No. 21 did not allow the jury to hold Overhead Door liable based solely on its failure to test the container. Accordingly, the plaintiff's failure to test theory—and the statement of law in Instruction No. 21—"fit into" the "traditional product claim[ ]" that Overhead Door's container was unreasonably dangerous in design. *Powell*, 198 F. Supp. 3d at 633-34 (quoting *Ball*, 963 F. Supp. 2d at 506). Instruction No. 21, therefore, accurately states Virginia products liability law.

> Second, Instruction No. 22 provides:
>
> If the seller knows, or by using ordinary care has a reason to know, that a product is likely to be dangerous or defective, he has a duty to make inspections or tests that are reasonably necessary to see that the product is safe for its intended purpose, and for any other reasonably foreseeable use.
>
> If a seller fails to perform this duty, then he is negligent.

(Dk. No. 151, at 23.) The Court adopted Virginia Model Civil Instruction No. 34.170 as Instruction No. 22. *See* Virginia Model Jury Instructions – Civil Instruction No. 34.170 (Matthew Bender & Co. 2020).

Instruction No. 22 prefaces the duty to test with the following qualifying phrase: "[i]f the seller knows, or by using ordinary care has a reason to know, *that a product is likely to be dangerous or defective*." (Dk. No. 151, at 23 (emphasis added).) Thus, the jury had to first find that Overhead Door knew, or by using ordinary care had a reason to know, that the container was

6

"likely to be dangerous or defective" before holding Overhead Door liable for failing to test the container. (*Id.*) Put differently, the jury could not find that Overhead Door breached a duty to test the container without also finding that the container was likely to be dangerous or defective.

Like Instruction No. 21, Instruction No. 22 does not suggest that Overhead Door had an independent duty to test the container. Instead, both instructions correctly reflect that the duty to test "is subsumed within the general duty of the manufacturer to avoid acting in a negligent manner." *Powell*, 198 F. Supp. 3d at 633.

The Court's decision not to adopt Overhead Door's preferred jury instructions does not entitle Overhead Door to a new trial. And in light of the Court's "broad discretion in framing its instructions to a jury," *Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 233 (4th Cir. 2016), the Court will deny Overhead Door's motion for a new trial based on Instruction Nos. 21 and 22.

## 2. *The Safety Manual and Lawrence's Testimony*

Overhead Door sought to introduce evidence that Sardis had received a copy of the Mid-Atlantic Door Group safety manual (the "safety manual") when he began working at WOD, presumably to show that Sardis' behavior violated WOD's safety standards. The plaintiff moved to exclude the safety manual, arguing that Virginia law prohibits a party from introducing a company's internal policies to establish the standard of care. The Court agreed with the plaintiff, reasoning that "Virginia courts have decided that a company's 'private rules' are inadmissible to prove a standard of care." *Benedict v. Hankook Tire Co. Ltd.*, 295 F. Supp. 3d 632, 650 (E.D. Va. 2018). Because "the Virginia rule is sufficiently bound-up with state policy so as to require its application in federal court," *Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 110 (4th Cir. 1995), the Court granted the plaintiff's motion to exclude evidence of the safety manual. (*See* Dk. No. 98, at

9.) The Court further held that Overhead Door could not introduce the safety manual to show Sardis' contributory negligence because doing so risked confusing the jury. *See* Fed. R. Evid. 403.

At trial, Lawrence testified about the events leading to Sardis' accident and his subsequent death. Overhead Door argues that it suffered unfair prejudice based on the following testimony that plaintiff's counsel elicited from Lawrence:

> Q. So, as I understand it, the two of you, [Sardis] and you, climbed on the back of the truck?
> A. Yes, sir.
> Q. And you got up on the rack.
> A. Yes, sir.
> Q. Correct? Stood on the ladders?
> A. Yes.
> Q. You did that in view of your service manager, correct?
> A. Yes.
> Q. Did he say, don't do that?
> A. No, sir.

(Trial Tr. 341:16 to 342:2.) Overhead Door contends that the Court improperly allowed Lawrence to testify about WOD's policies and practices even though it excluded the safety manual.

Even assuming that the Court erred by allowing plaintiff's counsel to elicit Lawrence's testimony, that error would be harmless. *See Sergent v. Anne Arundel County*, 681 F. Supp. 2d 631, 634 (D. Md. 2010) ("Evidentiary errors are harmless if the Court can say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors." (internal quotation marks and alterations omitted)). Moreover, "only errors that cause substantial harm to the moving party . . . justify a new trial, and errors that are not prejudicial do not necessitate a new trial." *DePaoli v. Vacation Sales Assocs., L.L.C.*, No. 2:04cv635, 2006 WL 1117799, at *10 (E.D. Va. 2006), *aff'd with modification of monetary award*, 489 F.3d 615 (4th Cir. 2007).

Overhead Door argues that Lawrence's testimony "suggest[s] that [Sardis'] actions were acceptable under WOD's policies and practices," and that it suffered prejudice because the Court "allowed [the] [p]laintiff to present evidence to overcome a key defense while precluding Overhead Door from introducing evidence in support of that defense." (Dk. No. 167, at 11.) Overhead Door equates the probative power of a company's entire safety manual with ten lines of testimony from a fact witness. More to the point, Overhead Door took great pains to drive home its contributory negligence defense at trial. Indeed, to prove the point that Sardis contributed to his own injury, defense counsel used a yardstick to show the jury the height of Lawrence's service truck and thus how high off the ground Sardis was standing when he fell. Further, Lawrence testified at length on cross-examination regarding his conversation with Sardis that the container was too heavy to move manually and that he never asked Sardis to climb on top of the truck to help move the container. (*See, e.g.*, Trial Tr. 371:21 to 372:10; 391:13-22.)

The parties presented conflicting evidence to the jury as to Lawrence's contributory negligence, which the jury ultimately resolved against Overhead Door. Overhead Door cannot now claim that ten cherry-picked lines of testimony—even if erroneously admitted—affected its "substantial rights" after four days of evidence and rigorous cross-examination. *See Taylor v. Va. Union Univ.*, 193 F.3d 219, 235 (4th Cir. 1999) (en banc), *abrogated on other grounds by Desert Palace Inc. v. Costa*, 539 U.S. 90, 123 (2003); *see also* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any

party's substantial rights."). The Court, therefore, will deny Overhead Door's motion for a new trial based on the alleged "lopsided" rulings.[6]

### 3. *Testimony Regarding the Length of the Nails*

Overhead Door objects to questions plaintiff's counsel asked Overhead Door's corporate designee, Brad Knable, regarding the length of the nails in the container. Overhead Door contends that the Court improperly allowed plaintiff's counsel to elicit the nail length testimony from Knable because "[w]hether, and to what extent, nail length is significant is a technical subject that requires expert testimony." (Dk. No. 167, at 12.)

Specifically, Overhead Door objects to the following line of questioning:

| | |
|---|---|
| Q. | And it is [Overhead Door's] position in this case, your position, that the half to three quarters of an inch on three nails on one side and three nails on the other side is enough to pull a 125-pound crate with one hood in it, correct? |
| A. | Correct. |
| Q. | A 225-pound crate with two hoods in it, like the one in this case, correct? |
| A. | Correct. |
| Q. | A 325-pound crate when it has three hoods in it? |
| A. | Correct. |

(Trial Tr. 646:4-14.)

Defense counsel did not object to the above line of questioning. Plaintiff's counsel also asked Knable about the length of the nails during portions of Knable's videotaped deposition, which the plaintiff played at trial. (*See* Knable Dep. 68:20-22; 76:9-20.) Overhead Door did not object to the designation of that testimony.

---

[6] The plaintiff argues that Overhead Door has waived its right to object to Lawrence's testimony because it did not raise the objection during Lawrence's testimony at trial. Overhead Door, however, filed a motion to exclude any evidence of WOD's "policies and practices" before trial, which the Court denied. (Dk. Nos. 103, 132.) Overhead Door did not need to object again at trial to preserve its challenge to Lawrence's testimony. *See* Fed. R. Evid. 103(b) ("Once the court rules definitely on the record – either before or at trial – a party need not renew an objection or offer of proof to preserve a claim of error for appeal.").

At closing argument, plaintiff's counsel argued that "ODC admits that six nails went in. Sorry. Six nails, that each went a little more than one half inch into the wood frame, were supposed to hold a handle." (Trial Tr. 845:15-18.) Defense counsel objected. At the bench conference, defense counsel argued that plaintiff's counsel was "suggesting now there is some problem with the nails in this case. Dr. Singh testified unequivocally he had no complaints about the materials. There is no expert that is going to talk about a standard about how long the nails should be, how far into the wood they should go." (*Id.* at 845:23 to 846:3.) The Court overruled the objection.

Overhead Door cannot now claim error based on testimony to which it failed to object during or before trial. *See* Fed. R. Evid. 103(a)(1)(A) ("A party may claim error in a ruling to admit or exclude evidence only if . . . a party on the record . . . timely objects or moves to strike."). A party makes a timely objection only when it raises the objection "at the time the evidence is offered," and "an objection not property invoked is *waived.*" *United States v. Parodi*, 703 F.2d 768, 783 (4th Cir. 1983) (internal citations and quotation marks omitted) (emphasis in original). Moreover, "[a] principle that strikes very deep is that a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result." *Perez v. S&H Rest., Inc.*, No. 1:15cv1259, 2016 WL 10537397, at *2 (E.D. Va. Dec. 21, 2016) (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2805 (3d ed.)).

Because Overhead Door failed to object to the nail length testimony during trial, it "cannot now argue with hindsight" that the admission of the nail length testimony "was such an abuse of

discretion as to merit a new trial." *Id.* at *3. Accordingly, the Court will deny Overhead Door's motion for a new trial based on the nail length testimony.[7]

#### 4. *The Assumption of the Risk Defense*

Overhead Door asserted the defense of assumption of the risk, arguing that Sardis assumed the risk of the accident by pulling on the container in unsafe conditions. Under Virginia law, assumption of the risk "has two requirements: the nature and extent of the risk must be fully appreciated and the risk must be voluntarily incurred." *Amusement Slides Corp. v. Lehman*, 217 Va. 815, 232 S.E.2d 803, 805 (1977). "Knowledge of the risk is essential to assumption." *Budzinski v. Harris*, 213 Va. 107, 189 S.E.2d 372, 375 (1972). Unlike contributory negligence, assumption of the risk "involves a subjective test[:] whether a plaintiff fully understood the nature and extent of a known danger and voluntarily exposed himself to it." *Artrip v. E.E. Berry Equip. Co.*, 240 Va. 354, 397 S.E.2d 821, 824 (1990).

At the hearing on the jury instructions, the plaintiff moved to strike Overhead Door's assumption of the risk defense. The plaintiff argued that a subjective standard governs assumption of the risk, and that the evidence in the case had demonstrated that Overhead Door "actually intended that the very slat that broke be used for the very purpose for which Mr. Sardis used it." (Trial Tr. 803:8-21.) The Court agreed with the plaintiff and struck the assumption of the risk defense. Overhead Door now argues that it presented sufficient evidence to submit its assumption of the risk defense to the jury.

During his deposition, Knable agreed that "a user of the [container] such as Mr. Sardis can reasonably expect that if [he] pull[s] on it that it will hold up." (Knable Dep. 133:16-19.) Knable

---

[7] Even if Overhead Door did not waive its ability to object to the nail length testimony, the Court would not grant a new trial because Overhead Door has failed to show that the testimony affected its "substantial rights." *See Taylor*, 193 F.3d at 235.

also acknowledged that "[p]ulling on the end of a [container], using the gap to pull on the end of an [Overhead Door] [container], in and of itself is not a misuse of the product." (*Id.* 136:4-7.) Knable further agreed that workers "sometimes . . . need to pull on . . . the ends" of a container "[w]hile . . . on top of the [work] truck," and that there is "nothing wrong with" doing so. (*Id.* at 137:12-17.)

The testimony of Overhead Door's designee shows that pulling on the handhold cannot constitute a "known danger." *Artrip*, 397 S.E.2d at 824. Indeed, a worker who pulls on a container's handhold uses the handhold in the exact manner in which it was designed to be used. Knable's testimony also contradicts Overhead Door's argument that a worker voluntarily exposes himself to a known risk when he pulls on the handhold while standing on top of a work truck. Thus, the evidence foreclosed the argument that Sardis could have fully appreciated a known risk when he climbed on top of Lawrence's truck and pulled on the handhold.[8] The Court, therefore, will deny Overhead Door's motion for a new trial based on the assumption of the risk defense.

### 5. *Definition of "Reason to Know"*

Under Virginia law, a manufacturer's duty to warn of its product's dangers "rests on a *reason to know* standard rather than the broader *should have known* standard." *Torkie-Tork v. Wyeth*, 757 F. Supp. 2d 567, 572 (E.D. Va. 2010) (citing *Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 413 S.E.2d 630, 634-36 (1992)). Overhead Door contends that it is entitled to a new trial because the Court declined to adopt its proposed instruction that included a definition

---

[8] Moreover, "Virginia law no longer recognizes assumption of the risk as a valid defense in breach of implied warranty actions." *Dix v. Constr. Metal Prods., Inc.*, No. 4:15cv24, 2016 WL 4435276, at *2 (W.D. Va. Aug. 19, 2016). Here, the jury found that Overhead Door breached the implied warranty of merchantability. (Dk. No. 149, at 2.)

of "reason to know,"[9] and because the Court conflated the "reason to know" standard with the "should have known" standard in its response to a jury question.

"The party challenging the jury instructions faces a heavy burden." *Noel v. Artson*, 641 F.3d 580, 586 (4th Cir. 2011). When a district court declines to give a particular instruction, the Fourth Circuit will reverse "only when the requested instruction: '(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired' that party's ability to make its case." *Id.* at 586-87 (quoting *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010)).

Here, Overhead Door argues that the Court should have included a definition of "reason to know" somewhere in the instructions, and that the Court's failure to do so entitles Overhead Door to a new trial. In Instruction No. 23, the Court instructed the jury as follows:

> When a manufacturer knows, or by the use of ordinary care has a *reason to know*, that its product is potentially dangerous, and that this danger is not obvious or readily discoverable by the buyer, and that injury reasonably could be anticipated, the manufacturer has a duty to give an adequate warning of this danger.

> If the manufacturer had a duty to give a warning, and if it failed to give an adequate warning, then it was negligent.

(Dk. No. 151, at 24 (emphasis added).)

To support its argument for a new trial, Overhead Door relies on the Fourth Circuit's decision in *BMG Rights Management (US) LLC v. Cox Communications, Inc.*, 881 F.3d 293 (4th

---

[9] Overhead Door proposed the following instruction:

In determining whether a duty to warn was owed to Mr. Sardis, the phrase "reason to know" means that Overhead Door had information and knowledge of facts that would lead a reasonable person to believe that the [container] was unreasonably dangerous absent a warning.

(Dk. No. 126, at 24.)

Cir. 2018). In that case, the court ordered a new trial based on the district court's erroneous instructions regarding contributory patent infringement. The district court instructed the jury that it could impose liability for contributory infringement on a "knew or should have known" standard. *Id.* at 310. Because contributory infringement requires "at least willful blindness," *id.* at 308, the Court incorrectly charged the jury that it could impose liability based on a negligence "should have known" standard. *Id.* at 310.

Overhead Door has failed to show that the Court's decision not to define "reason to know" "seriously impaired" its ability to make its case. *Noel*, 641 F.3d at 586-87. Unlike the district court in *BMG Rights Management*, 881 F.3d at 310, which charged the jury with an incorrect legal standard for contributory infringement, the Court charged the jury with the correct "reason to know" standard in this case. *Cf. United States v. Wilson*, 133 F.3d 251, 265 (4th Cir. 1997) (ordering a new trial because "the instructions did not adequately impose . . . the burden of proving knowledge"). In other words, the Court "provided the jury 'the appropriate legal standard and left counsel more than enough room to argue the facts in light of that standard.'" *Gray v. Bd. of Cty. Comm'rs of Frederick Cty.*, 551 F. App'x 666, 673-74 (4th Cir. 2014) (quoting *Noel v. Artson*, 641 F.3d 580, 587 (4th Cir. 2011)).

Nor is Overhead Door entitled to a new trial because the Court twice mentioned the phrase "should have known" in response to a jury question. (*See* Trial Tr. 956:9 to 957:3.) The Court correctly charged the jury with the "reason to know" standard. The Court's subsequent use of the phrase "should have known" does not negate the correct instructions governing the jury's decision. *Cf. Wannall v. Honeywell Int'l, Inc.*, No. 10-351 (BAH), 2013 WL 12321548, at *3 (D.D.C. May 8, 2013) (denying the defendant's motion in limine in a products liability case under Virginia law "insofar as it seeks to impose a 'gag' order, prohibiting the plaintiff or his expert witnesses from

using or referring to the phrase 'should have known'"). The Court, therefore, will deny Overhead Door's motion for a new trial based on the Court's decision not to define "reason to know" and use of the phrase "should have known."

### 6. *Jury Instruction on the Failure to Warn Claim*

Finally, Overhead Door argues that the Court should have given the jury a separate instruction regarding the plaintiff's duty to prove that Sardis would have "heeded" a warning not to pull on the container.[10] Overhead Door argues that the Court should have instructed the jury that the plaintiff had the burden to prove that Sardis would have heeded a warning because "Virginia does not observe a heeding presumption." *Ford Motor Co. v. Boomer*, 285 Va. 141, 736 S.E.2d 724, 733 (2013).[11]

Viewed as a whole, the Court's instructions adequately explained the duty to warn under Virginia law and "substantially covered" the plaintiff's burden to prove proximate causation. *Noel*, 641 F.3d at 586-87. For example, in Instruction No. 14, the Court defined the term "proximate cause of the injury" as "a cause which in natural and continuous sequence produces the injury. It is a cause without which the injury would not have occurred. There may be more than one

---

[10] Overhead Door proposed the following instruction:

> Plaintiff bears the burden to prove that the alleged failure to warn was the proximate cause of the accident. In order to prove that the alleged failure to warn proximately caused the accident, Plaintiff must show that a warning would have prevented Mr. Sardis' injury. If you find that an adequate warning would not have changed Mr. Sardis' behavior, then the alleged failure to warn was not a proximate cause of the accident and you should find in favor of Overhead Door.

(Dk. No. 126, at 25.)

[11] "A heeding presumption is 'a rebuttable presumption that an injured product user would have followed a warning label had the product manufacturer provided one.'" *Id.* at 733 n.4 (quoting Black's Law Dictionary 1305 (9th ed. 2009)).

proximate cause of an injury." (Dk. No. 151, at 15.) In Instruction No. 15, the Court outlined the plaintiff's three claims, including "[t]hat Overhead Door negligently failed to warn about the dangers of the container." (*Id.* at 16.) After listing the plaintiff's claims, the Court instructed the jury that the plaintiff "has the burden of proving these claims by the preponderance of the evidence." (*Id.*) Similarly, in Instruction No. 17, the Court instructed the jury that "[t]he plaintiff has the burden of proving . . . that the defendant's negligence was a proximate cause of the accident and any of the injuries to the plaintiff." (*Id.* at 18.)

Overhead Door argues that the Court committed plain error because the Court omitted an element of the plaintiff's failure to warn claim when it declined to give a "heeding" instruction. The Supreme Court of Virginia has defined the elements of a failure to warn claim as follows:

[I]n bringing a failure to warn claim, a party must prove that the manufacturer:

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Funkhouser v. Ford Motor Co.*, 285 Va. 272, 736 S.E.2d 309, 313 (2013). Instruction No. 23 captured all the above elements of a failure to warn claim.

Overhead Door cites the Supreme Court of Virginia's decision in *Boomer* for the proposition that "[h]eeding is an element of the tort of failure to warn in Virginia." (Dk. No. 177, at 9.) Overhead Door mischaracterizes *Boomer*. In that case, the defendants argued that the plaintiff did not present sufficient evidence that any failure to warn proximately caused the decedent's injury. *Boomer*, 736 S.E.2d at 733-35. The court rejected the defendants' argument, holding that the jury "could reasonably infer that [the decedent], if properly informed of the[ ]

dangers at the time, would have taken precautionary measures." *Id.* at 734. The court addressed the defendants' "heeding" argument in the context of proximate causation, and never described "heeding" as an element of a failure to warn claim.

Here, the Court properly instructed the jury that the plaintiff had the burden to prove her claims, including the burden to prove proximate causation. *See Noel*, 641 F.3d at 586 ("It is easy enough to pick at words, phrases, and sentences in a charge, but that overlooks the fact that the charge in its totality was what the jury heard."). Because the instructions left defense counsel "more than enough room to argue the facts in light of [the correct] standard," *Gray*, 551 F. App'x at 673-74, the Court will deny Overhead Door's motion for a new trial based on the Court's decision not to give the proposed "heeding" instruction.

### III. RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

In its renewed motion for judgment as a matter of law, Overhead Door raises six arguments: (1) the plaintiff cannot prove her claims without the product at issue; (2) the plaintiff did not introduce sufficient evidence to establish a design defect; (3) the plaintiff did not introduce sufficient evidence that any defect in the container proximately caused Sardis' accident; (4) the plaintiff did not introduce sufficient evidence to establish that Overhead Door had a reason to know of a hazard; (5) Sardis was contributorily negligent as matter of law; and (6) Overhead Door included a valid disclaimer of any implied warranty of merchantability.

#### A. Legal Standard

"If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). "In ruling on the renewed

motion, the Court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order

a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b)(1)-(3).

"Under Rule 50, a court should render judgment as a matter of law when . . . there is no

legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves*

*v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000). In other words, "[j]udgment as a

matter of law is proper only when there can be but one reasonable conclusion as to the proper

judgment." *Volvo Cars of N. Am., LLC v. United States*, 571 F.3d 373, 381 (4th Cir. 2009). If

sufficient evidence exists for a reasonable jury to find in the non-movant's favor, however, a court

must deny the motion. *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 292 (4th Cir. 2009). "In making its

determination, the trial court must consider 'the record as a whole in the light most favorable to

the non-movant.'" *Wallace v. Poulos*, 861 F. Supp. 2d 587, 597 (D. Md. 2012) (quoting *Dotson*,

558 F.3d at 292).[12]

---

[12] As a threshold matter, the plaintiff argues that Overhead Door waived various arguments, noting the differences between its Rule 50(a) motion and its renewed motion under Rule 50(b). "[W]hen considering challenges to Rule 50(b) motions based on lack of specificity in Rule 50(a) motions, the Fourth Circuit has focused principally on whether the moving party, either in written or oral argument, provided sufficient notice to his opponent of the alleged deficiencies in the opponent's case." *Wallace*, 861 F. Supp. 2d at 597. In other words, "the specificity requirement should be 'construed liberally,' and the earlier Rule 50(a) motion need only 'provide[ ] the court and the nonmoving party sufficient notice of any alleged deficiencies in evidence.'" *Stevens & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16cv545-REP, 2018 WL 4844173, at *9 (E.D. Va. Oct. 4, 2018), *appeal docketed*, No. 19-1397 (4th Cir. Apr. 15, 2019) (quoting *Liberty Mut. Fire Ins. Co. v. JT Walker Indus., Inc.*, 554 F. App'x 176, 185 (4th Cir. 2014)). The plaintiff's argument elevates form over substance. Because Overhead Door gave the Court and the plaintiff enough notice to preserve its arguments in its subsequent Rule 50(b) motion, the Court declines to find that Overhead Door has waived any arguments in its renewed motion for judgment as a matter of law.

### B. Discussion

#### 1. *The Plaintiff's Failure to Produce the Container*

First, Overhead Door argues that all of the plaintiff's claims fail as a matter of law because the plaintiff did not produce the container at issue. "Virginia law does not support the proposition that a products liability case absolutely cannot go forward in the absence of the specific product alleged to have produced the injury, but the burdens which such a circumstance imposes on the plaintiff are substantial." *Lemons v. Ryder Truck Rental, Inc.*, 906 F. Supp. 328, 333 (W.D. Va. 1995). To satisfy her burden, the plaintiff had to establish that (1) the container was defective, and (2) that the defect existed "when it left the defendants' hands." *Id.*

Overhead Door argues that the plaintiff failed to eliminate all other reasonable possible causes of the accident and failed to show that the container was in substantially the same condition at the time of the accident as it was when Overhead Door distributed it to WOD. Overhead Door previously moved for summary judgment on the same grounds. The Court denied the motion, explaining that the plaintiff's expert reviewed photographs of the container as it existed shortly after the accident and testified that the container was defective because it did not comply with industry standards. (*See* Dk. No. 98, at 14.)

At trial, the jury saw photographs of the container as it existed after the accident. Additionally, Lawrence testified that he did not see any damage to the container when he was standing on the rack of his truck with Sardis. (*See, e.g.*, Trial Tr. 349:12-15.) Overhead Door continues to offer little more than speculation that the container was damaged before the accident. *Cf. Lemons*, 906 F. Supp. at 333-34 (finding the plaintiff's evidence insufficient when the evidence suggested that the manufacturer made modifications to the product at issue before the accident). Although the plaintiff did not produce the container at issue, sufficient evidence existed for a

reasonable jury to find that the container was not damaged before the accident and that the container failed when Sardis pulled on the handhold. Thus, the Court will deny Overhead Door's motion for judgment as a matter of law.

## 2. *The Plaintiff's Design Defect Claims*

Overhead Door contends that it is entitled to judgment as a matter of law on the plaintiff's claims for negligent design and breach of warranty. Overhead Door asserts that the plaintiff failed to establish the existence of a design defect and failed to establish that any defect proximately caused Sardis' death.

### a. *Whether the Plaintiff Established a Design Defect*

The plaintiff's design defect evidence came from her expert witness Sher Paul Singh, Ph.D., an expert in packaging design. At trial, Dr. Singh testified that Overhead Door's container does not comply with the industry standard of ASTM D6039.[13] (Trial Tr. 156:18-23.) Dr. Singh further testified that ASTM D6039 constitutes the relevant standard of care in the industry. (*Id.* at 157:7-14.)

First, Overhead Door asks the Court to strike Dr. Singh's testimony because Dr. Singh did not test the container before rendering his opinion and because Overhead Door insists that ASTM D6039 does not apply to the container. The Court previously considered Overhead Door's objections to Dr. Singh's testimony when it ruled on the parties' pretrial motions. (Dk. No. 98, at 5-6.) As the Court explained in its Opinion denying Overhead Door's motion to exclude Dr. Singh, "where an expert is otherwise qualified to testify, a lack of testing or failure to identify industry standards affects the weight of the evidence," not its admissibility. *Bilenky v. Ryobi Ltd.*, No.

---

[13] "ASTM D6039" refers to the American Society of Testing and Materials' Standard Specification for Open and Covered Wood Crates.

2:13cv345, 2014 WL 7530365, at *4 (E.D. Va. Dec. 5, 2014). At trial, Overhead Door vigorously cross-examined Dr. Singh and pointed out the shortcomings of his expert opinions. Notwithstanding Overhead Door's efforts, the jury apparently found Dr. Singh's opinions credible. Overhead Door presents no persuasive reasons that would justify striking Dr. Singh's testimony.

Second, Overhead Door argues in the alternative that Dr. Singh's testimony is insufficient to establish a design defect. To succeed on a products liability claim under Virginia law, a plaintiff must prove (1) "that the product contained a defect which rendered it unreasonably dangerous for ordinary or foreseeable use;" (2) "that the defect existed when it left the defendant's hands;" and (3) "that the defect actually caused the plaintiff's injury." *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993). "In determining what constitutes an unreasonably dangerous defect, a court will consider safety standards promulgated by the government or the relevant industry, as well as the reasonable expectations of consumers." *Id.* Here, Overhead Door contends that Dr. Singh's testimony failed to establish that the industry standard of ASTM D6039 governs the container's design.

At trial, Dr. Singh testified that ASTM D6039 requires a manufacturer to nail "end cleats" on the outside of a container. (Trial Tr. 165:21 to 166:3.) Dr. Singh explained that the "end cleats" depicted in ASTM D6039 are "pieces of vertical lumber that are nailed into the board," which are designed to "protect the horizontal boards from coming out." (*Id.* at 165:3-14.) He further testified that end cleats "reinforce the boards that are horizontally applied." (*Id.* at 168:23 to 169:4.) Dr. Singh opined that Overhead Door's container did not meet the specifications of ASTM D6039 because the container lacked "four end cleats" and the missing "six pieces [of lumber] . . . strengthen the ends of the crates." (*Id.* at 174:20-24; 175:6-11.) He also testified that Overhead Door nailed the end cleats on the *inside* of the container, whereas ASTM D6039 requires end cleats

to be nailed on the *outside* of the container. (*Id.* at 175:22 to 176:8.) And when end cleats are "nail[ed] . . . from the outside, it . . . reinforce[es] the pulling force or the integrity of the entire structure." (*Id.* at 176:3-8.)

The thrust of Dr. Singh's testimony was that ASTM D6039 applies to the design of Overhead Door's container and that the container fell short of that standard's specifications. Overhead Door points to various concessions Dr. Singh made on cross-examination, but those statements do not render his entire testimony void. The plaintiff presented sufficient evidence to meet her burden that Overhead Door's container suffered from a design defect because it failed to comply with an applicable industry standard. Because a reasonable jury could find that the container did not meet the specifications set forth in ASTM D6039, Overhead Door is not entitled to judgment as a matter of law on the plaintiff's design defect claims.

### b. Whether the Plaintiff Established Proximate Causation

Overhead Door argues that the plaintiff failed to establish proximate causation through Dr. Singh's testimony. To succeed on a products liability claim, a plaintiff must show that a product's defect "actually caused the plaintiff's injury." *Alevromagiros*, 993 F.2d at 420. "[A] plaintiff seeking recovery bears the burden to produce evidence showing that the defendant was the proximate cause of the injury sustained." *McCauley v. Purdue Pharma L.P.*, 331 F. Supp. 2d 449, 461 (W.D. Va. 2004). "The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Beale v. Jones*, 210 Va. 519, 171 S.E.2d 851, 853 (1970). "Proximate causation is ordinarily a question of fact for the jury but may be resolved by a court as a matter of law when reasonable persons could not differ as to its existence or absence." *McCauley*, 331 F. Supp. 2d at 461.

First, Overhead Door asks the Court to strike Dr. Singh's testimony, arguing that Dr. Singh improperly provided a legal opinion and that his opinions are otherwise unreliable. Plaintiff's counsel asked Dr. Singh his "opinion . . . to a reasonable degree of certainty as to whether any of [Overhead Door's] failures . . . were a proximate cause of any injury to Mr. Sardis." (Trial Tr. 195:23 to 196:5.) The Court interjected: "Well, that is for the jury to say." (*Id.* at 196:6.) Dr. Singh then gave his opinion that the design defect was a proximate cause of Sardis' injury. (*Id.* at 196:10-11.) Overhead Door also contends that Dr. Singh's testimony is unreliable, again pointing to Dr. Singh's failure to conduct any testing. Overhead Door's issues with Dr. Singh's testimony go to its weight, not its admissibility. *See Bilenky*, 2014 WL 7530365, at \*4. The Court declines to strike Dr. Singh's causation opinions for the same reasons that it will not strike his design defect opinions.

Second, Overhead Door argues that Dr. Singh's testimony is insufficient to establish that a design defect caused Sardis' death. Dr. Singh testified that Overhead Door's container was missing "end cleats" as ASTM D6039 requires, and that the container would have held up if it had those end cleats. Specifically, Dr. Singh testified as follows:

> Q. Do those six pieces that are missing strengthen the ends of the crate?
> A. Absolutely. Because it is not just the wooden members, but it is all the fasteners that are going in. So they are all tied together with staples and nails or fasteners.

(Trial Tr. 175:6-11.) Dr. Singh's theory was that the absence of the additional end cleats made the container less structurally sound, which led to the container's failure and thus Sardis' accident.

Dr. Singh's opinions had some flaws, which Overhead Door highlighted on cross-examination. Ultimately, however, Dr. Singh's testimony gave the jury sufficient evidence to conclude that the container's defective design proximately caused Sardis' death. In other words, this is a case in which more than "one reasonable conclusion as to the proper judgment" regarding

proximate causation exists. *Volvo Cars*, 571 F.3d at 381. Thus, Overhead Door is not entitled to judgment as a matter of law on that issue.

### 3. *The Plaintiff's Failure to Warn Claim*

Next, Overhead Door asserts that it is entitled to judgment as a matter of law on the plaintiff's failure to warn claim. Overhead Door contends that the plaintiff failed to establish that it had a reason to know of a hazard. Specifically, Overhead Door argues that the plaintiff's human factors expert, Michael S. Wogalter, Ph.D., erroneously applied a "should have known" standard. Overhead Door further contends that the plaintiff failed to introduce evidence that it knew or had reason to know that the container was dangerous.

To be sure, "the appropriate standard in Virginia is whether a manufacturer has a *reason to know*, not whether the manufacturer *should know*." *Watson*, 413 S.E.2d at 635. Indeed, "[t]he only dangers for which [a manufacturer] ha[s] a duty to warn adequately are those dangers which [the manufacturer] knew or had reason to know existed based on the science available at the time the product left [the manufacturer's] hands." *Torkie-Tork*, 757 F. Supp. 2d at 573 (citing *Watson*, 413 S.E.2d at 634).[14]

Overhead Door has adopted an untenable interpretation of the "reason to know" standard. The Supreme Court of Virginia's earlier decision in *Featherall v. Firestone Tire & Rubber Co.*,

---

[14] "To establish that a manufacturer knows or has reason to know of the danger in a duty to warn case, a plaintiff may present evidence of similar incidents, provided the prior incidents occurred 'under substantially the same circumstances, and had been caused by the same or similar defects and dangers as those in issue.'" *Funkhouser*, 736 S.E.2d at 314-15 (quoting *Roll 'R' Way Rinks, Inc. v. Smith*, 218 Va. 321, 237 S.E.2d 157, 160 (1977)). In this case, the plaintiff sought to introduce evidence of prior handhold failures. Overhead Door moved to exclude evidence of the prior incidents, arguing that the other incidents did not involve a container with a similar design as the container in this case. The Court granted Overhead Door's motion to exclude evidence of the prior incidents, holding that those prior incidents did not occur under substantially the same circumstances as the plaintiff's incident. (Dk. No. 98, at 10-11.)

219 Va. 949, 252 S.E.2d 358 (1979), which the court relied on in *Watson*, sheds light on the circumstances under which a manufacturer has a "reason to know" of a product's dangers.

In *Featherall*, the court explained that "[t]he duty to warn stems from the view that the manufacturer should have superior knowledge of his product." 252 S.E.2d at 366. *Featherall* teaches that a manufacturer's liability under the "reason to know" standard extends beyond actual knowledge of its product's dangers. Indeed, "[i]t would be fundamentally irreconcilable to charge a manufacturer with 'superior knowledge of his products,' while at the same time only hold the manufacturer responsible for information of which it had actual awareness or possession." *Wannall*, 2013 WL 12321548, at *3. Thus, a manufacturer has a "reason to know" of a product's dangers even when the manufacturer does not have "actual awareness or possession of information" about the dangers. *Id.* Otherwise, "a manufacturer would be free to—and in fact would have a rational incentive to—bury its head in the sand and learn as little as possible about its products." *Id.* Accordingly, "even under the 'reason to know standard,' . . . a manufacturer has a general duty to make reasonable inferences from relevant and reasonably available facts." *Id.*

Knable—Overhead Door's corporate designee—testified that he did not "ever consider the potential dangers that its packaging or crates can pose to others," that he was not "familiar with industry standards as a general concept," and that Overhead Door did not teach its employees "about the potential dangers that [containers] could pose to others." (Knable Dep. 33:19-22; 34:10-11; 35:20-23.) Knable also described the field testing that Overhead Door performed on a previous version of the container:

> [W]e did the trial with our distributors, we sent products to the West Coast because of the damage that we were getting. . . . We did the people standing on it. We put these boxes outside for water test to see what the box was going to do, if it got weathered. And other than that, that was about all the tests we have done besides moving it around in the facility.

(*Id.* at 173:6 to 174:2.) In response to a question about whether Overhead Door performed any "test[s] to determine precisely how much weight the handholds could withstand before they would break," Knable testified,

> We felt like that was tested with our cardboard box with the cardboard ends. Our distributors had moved that for 25, 30 years with the cardboard box. And with us going with wood, wood is much stronger than cardboard and so we felt like that was already tested, the handholds, so – and then there were no issues on the cardboard box. So what would wood do besides make it stronger.

(*Id.* at 175:7-18.)

Dr. Wogalter testified that Overhead Door failed to examine the container "in a systematic definitive way." (Trial Tr. 278:10-15.) He concluded that Overhead Door's testing was insufficient, explaining that manufacturers must "solicit feedback" and "can't just wait" for reports of issues from the field because "just getting reports . . . underestimates the problem that may be there." (*Id.* at 278:22 to 279:5.) Dr. Wogalter further noted that Overhead Door field tested a previous design of the container but performed no testing after adopting the new design. (*Id.* at 281:21 to 282:2.)

Based on the testimony of Knable and Dr. Wogalter, a reasonable jury could find that Overhead Door violated its "general duty to make reasonable inferences from relevant and reasonably available facts," *Wannall*, 2013 WL 12321548, at *4, and failed to maintain "superior knowledge of [its] product," *Featherall*, 252 S.E.2d at 366. Indeed, Knable testified that Overhead Door did not try to learn anything about whether the handhold could withstand any weight. (*See* Trial Tr. 173:6 to 174:2; 175:7-18.) Thus, a reasonable jury could find that Overhead Door adopted the "bury its head in the sand" approach at least with respect to the handhold's potential dangers. *Wannall*, 2013 WL 12321548, at *4. In sum, sufficient evidence exists to support the jury's finding

that Overhead Door had a "reason to know" of the container's dangers. Overhead Door, therefore, is not entitled to judgment as a matter of law.

### 4. *The Plaintiff's Negligent Design and Failure to Warn Claims*

Overhead Door contends that it is entitled to judgment as a matter of law on the plaintiff's negligent design and failure to warn claims, arguing that Sardis was contributorily negligent as a matter of law. Overhead Door points out that Sardis "climb[ed] eight feet in the air onto the rack of the service truck and attempt[ed] to manually move the [container] that he and Mr. Lawrence together were unable to move." (Dk. No. 165, at 24.) Before trial, Overhead Door moved for summary judgment on the same ground. The Court denied the motion, explaining that reasonable minds could differ with respect to Sardis' negligence. (Dk. No. 98, at 14-15.)

"In Virginia, a defense of contributory negligence exists where a 'plaintiff fails to act as a reasonable person would have acted for his own safety under the circumstances.'" *Bilenky v. Ryobi Techs., Inc.*, 115 F. Supp. 3d 661, 676 (E.D. Va. 2015) (quoting *Artrip*, 397 S.E.2d at 824). "The question of whether one was contributorily negligent is one for the jury to decide unless no reasonable minds could differ on the issue." *Id.* This is a case in which reasonable minds could differ on the issue of Sardis' negligence. Sardis had been working for Overhead Door for five days before the accident. Additionally, Lawrence testified that it was entirely proper for Sardis to be up on the service truck "[a]s long as there wasn't any movement from the fork lift or the box." (Trial Tr. 365:7-15.)

The parties presented conflicting evidence as to whether Sardis contributed to his own injuries. The jury reasonably found that he did not. Because reasonable minds could differ with respect to contributory negligence, the Court will deny Overhead Door's motion for judgment as a matter of law on that issue.

### 5. *The Plaintiff's Breach of Implied Warranty Claim*

Finally, Overhead Door argues that it is entitled to judgment as a matter of law on the plaintiff's breach of implied warranty claim. Overhead Door contends that it included a valid disclaimer of the implied warranty of merchantability in its distributor agreement (the "Agreement"), and that the plaintiff failed to show that Overhead Door materially breached the Agreement.

When a party materially breaches a provision of a contract, it cannot enforce that contract. *Horton v. Horton*, 254 Va. 111, 487 S.E.2d 200, 203 (1997). "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Id.* Here, the plaintiff contends that Overhead Door cannot enforce the disclaimer of the implied warranty of merchantability in the Agreement. The plaintiff argues that Overhead Door's failure to instruct its distributors on the safe handling of its container constitutes a material breach of the Agreement.

The Agreement contains the following language under a section entitled "Safety Responsibilities": "[Overhead Door] furnishes information to distributors regarding safe handling, use[,] and installation of its Products." (Pl.'s Trial Ex. 31, § IX(a).) Notwithstanding that provision, Knable testified that he was unaware of any safe handling information that Overhead Door provides to its distributors. (Knable Dep. 189:2-20.) Knable also testified that safety is "one of [Overhead Door's] core values," and agreed that "people can be injured" or killed "if a manufacturer doesn't properly consider safety." (*Id.* at 32:6-17.)

Overhead Door previously moved for summary judgment on this issue. The Court denied the motion, reasoning that the plaintiff presented a triable issue as to whether Overhead Door materially breached the Agreement. *Cf. Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, No.

7:16cv489, 2018 WL 4008993, at *6-9 (W.D. Va. Aug. 22, 2018) (denying cross-motions for summary judgment on whether the defendant's actions constituted a material breach of contract). Knable described safety as one of Overhead Door's core values, yet admitted that Overhead Door did not provide any safe handling information to its distributors as provided in the Agreement. Thus, a reasonable jury could find that Overhead Door's failure to give its distributors safe handling information "defeat[ed] the essential purpose of the contract." *Horton*, 487 S.E.2d at 203. Because sufficient evidence supports the jury's conclusion that Overhead Door materially breached the Agreement, Overhead Door is not entitled to judgment as a matter of law on the plaintiff's breach of warranty claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny Overhead Door's motion for a new trial and renewed motion for judgment as a matter of law.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 13 March 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

30